(C. D. 126)

Aoki Taiseido Book Co. v. United States

United States Customs Court, Second Division

(Decided March 13, 1939)

*Harper & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Charles A. Galligan, Daniel I. Auster*, and *Samuel D. Spector*, special attorneys), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Kincheloe, Judge: Although these three suits relate to merchandise which was assessed with various rates of duty under different paragraphs of the Tariff Act of 1930, they were consolidated for the purposes of trial on motion of counsel for the plaintiff to which no objection was offered by counsel for the defendant. The assessments of duty by the collector on the merchandise in dispute in each case are as follows: In protest 810161–G the merchandise invoiced

as "Shogakusei" and as "Shonen Club Supplement" was assessed at the rate of 70 per centum ad valorem under paragraph 1513 as toys; and the merchandise invoiced as "Younen Club Supplement" was assessed at the rate of 15 per centum ad valorem under paragraph 1410 as children's books. In protest 810262–G the merchandise invoiced as "Shufu No Tomo" was assessed at the rate of 35 per centum ad valorem under paragraph 1413 as manufactures of paper not specially provided for. In protest 877863–G the merchandise invoiced as "Fujin Club" was assessed at the rate of 8 cents per pound under the provision in paragraph 1406 for "fashion magazines or periodicals, printed in whole or in part by lithographic process, or decorated by hand."

Plaintiff claims that all of the said merchandise is free of duty under paragraph 1726 of the said tariff act, which paragraph, so far as pertinent, reads as follows:

Newspapers, * * * and periodicals; but the term "periodicals" as herein used shall be understood to embrace only unbound or paper-covered publications issued within six months of the time of entry, devoted to current literature of the day, or containing current literature as a predominant feature, and issued regularly at stated periods, as weekly, monthly, or quarterly, and bearing the date of issue.

Plaintiff contends that the articles in question are supplements to periodicals bearing the same name under which they were invoiced; that such supplements are integral parts of the said periodicals; and that each periodical with its supplement or supplements should be regarded for tariff purposes as an entirety. The periodicals of which the instant articles are claimed to be supplements were included in the shipments involved herein and were admitted free of duty under the provisions of said paragraph 1726.

Much of the testimony offered by plaintiff's three witnesses was directed toward establishing that the said periodicals and their alleged supplements are bought and sold together at one price; and that a subscription to a particular periodical includes delivery of all so-called supplements issued therewith. It is based upon such uncontradicted testimony that plaintiff principally stresses its contention that the said periodicals and the articles in dispute which are supplied therewith should be classified as entireties. Such proof, however, in our judgment has little, if any materiality, in the instant case, based upon the record before us as hereinafter discussed.

There were admitted in evidence as illustrative exhibits copies of certain of said periodicals, together with samples of the articles in question which were marked as exhibits in the case. All of the printed matter contained in said exhibits and illustrative exhibits is in the Japanese language.

It appears from the testimony of plaintiff's witnesses that the periodical "Fujin Club", represented by Illustrative Exhibit A, is a ladies' magazine dealing with current events, domestic science, and home economics; and that Exhibit 1, which is an alleged supplement to said Illustrative Exhibit A, is a book devoted to styles for girls' and ladies' dresses and contains patterns and descriptive matter concerning the method of making such dresses. It further appears from the testimony offered by plaintiff that the periodical "Shufu No Tomo," represented by Illustrative Exhibit B, deals with current events and information for housewives; and that Exhibit 2, which is an alleged supplement to said Illustrative Exhibit B, consists of patterns with instructions for making dresses and other wearing apparel for children. Concerning the periodicals "Tankai," "Shogakusei," "Shonen Club," and "Younen Club," the testimony of the said witnesses is corroborative to the effect that they are children's magazines, all of which deal with current events and contain other matters of interest for children of the ages for which the particular publication is intended. The periodical, "Tankai," is intended for children about fifteen years of age; "Shogakusei" is intended for school children in the first six grades; "Shonen Club" is intended for boys fifteen or sixteen years old; and "Younen Club" is intended for children between the ages of seven and twelve years. Plaintiff offered in evidence five samples, which were marked Exhibits 3–A to 3–E, inclusive, as representative of so-called supplements to the said children's periodicals. No testimony was offered with reference to any of said exhibits, but an examination of the same discloses that Exhibits 3–A and 3–C are cut-out toys, and Exhibits 3–B, 3–D, and 3–E, are children's books devoted exclusively to what are commonly known as "funnies" and cartoons.

Since the periodicals of which the instant articles are claimed to be supplements were classified under the provisions of said paragraph 1726, it must be presumed that they meet the requirements of said paragraph; and that they are devoted to current literature of the day, or contain current literature as a predominant feature. Therefore, supplements to such periodicals, in our judgment, must necessarily be devoted to the subject matter thereof, either as addenda or to complete some phase of it previously discussed, In other words, the supplement must directly relate, in some respect, to the literature to which the particular periodical is devoted, or ·which is the predominant feature thereof. Otherwise, the scope of said paragraph would be extended to include merchandise of an entirely different character, which, simply because it was imported with and issued with such a periodical, would be permitted free entry. Such a contruction seems to be not only consistent with the intent of Congress as ex-

pressed by the narrow construction placed on the term "periodicals" in said paragraph 1726, but also conforms to the common meaning of the word "supplement" as set forth by authorities. Funk & Wagnalls New Standard Dictionary defines the word "supplement" as follows:

something added that supplies a deficiency; especially, an addition to a publication.

In Webster's New International Dictionary, the definition of the noun, "supplement", is given as follows:

that which completes, or makes an addition to, something already organized, arranged, or set apart; specif., a part added to, or issued as a continuation of, a book or paper, to make good its deficiencies or correct its errors.

In our judgment the record before us fails to establish that the articles under consideration fall within the scope of the above definitions, as such definitions apply to the provisions of paragraph 1726, *supra*. We find nothing herein to show that the instant merchandise is an addition to, or a continuation of, or supplies any deficiencies to, the literature to which the said periodicals are devoted, or which is the predominant feature of the same.

A mere examination of the cut-out toys, Exhibits 3-A and 3-C, and the children's books, Exhibits 3-B, 3-D, and 3-E, is convincing, in our judgment, that they cannot be regarded as supplements to any periodical of the type contemplated by said paragraph 1726. Whether or not the patterns with instructions, relating to dresses and wearing apparel for children, as represented by Exhibits 1 and 2, are germane to the literature contained in the periodicals, "Fujin Club" and "Shufu No Tomo," represented by Illustrative Exhibits A and B, is not disclosed by the record. As we view the record before us, plaintiff has made no attempt to establish that the said exhibits are supplements to said periodicals, within the common meaning of that term, as hereinabove set forth. On the contrary, plaintiff's witnesses testified, in substance, that said Illustrative Exhibits A and B are not always issued with so-called supplements; that when additional articles are supplied with said periodicals, the subject matter of such articles is always different; that Exhibits 1 and 2, which are claimed to be supplements to the said periodicals, contain no reference to the subject matter thereof; and that they are entirely independent of themselves. In the *light of such testimony*, we are unable to make a positive finding that Exhibits 1 and 2 are supplements to the said periodicals, as that term is to be construed within the provisions of paragraph 1726, *supra*.

A very clear illustration of what constitutes a supplement is shown by Illustrative Exhibit C, which is a copy of an issue of "The National

Geographic Magazine," with "Special Map Supplement," and which was offered by counsel for the plaintiff for the purpose of showing "that an American magazine puts out a supplement which is used with the magazine." The special supplement referred to is a map bearing the title, "A Map of the Travels of George Washington," which supplements an article entitled "The Travels of George Washington," that appears in the contents of the said publication. From a careful study of the said map and a reading of the magazine article to which it relates, it is obvious that the map was compiled to assist readers of the said article, which deals with certain episodes in the career of George Washington. The map is marked to indicate routes taken by George Washington in his travels and places where he visited. It is purely an addition that supplies the reader with a more vivid picture of what is narrated in the printed matter. It is a supplement to the said magazine in the true sense of the word. It is clearly distinguishable, as an integral part of said magazine, from the articles under consideration and their connection with the periodicals with which they are issued.

On the basis of the record before us we are of the opinion that the articles in question and the periodicals with which they are issued are separate and distinct articles. So far as the record shows, neither is dependent for use on the other, and each is capable of performing the purpose for which intended without reference to the other. There is nothing to indicate that there is the direct relationship between them that exists between the magazine and its map supplement, as represented by said Illustrative Exhibit C. The articles under consideration may be considered as advertising mediums or as inducements to promote the circulation of periodicals with which they are issued, but they are not supplements, in our opinion, within the common meaning of that term as set forth in the definitions hereinabove cited. In our judgment each of the said articles in dispute is a separate entity and as such they were properly classified by the collector.

The protests are therefore overruled and the decision of the collector in each instance is affirmed. Judgment will be rendered accordingly.